B. Thurber Guild,
Plaintiff,

*vs.*

Sterling Drug, Inc., a corporation of the State of Delaware, and Winthrop Laboratories, Inc., a corporation of the State of Delaware,
Defendants.

*New Castle, June 27, 1958.*

*Herbert L. Cobin,* Wilmington, and *William D. Denson,* Washington, D.C., and *George B. Finnegan, Jr.,* New York City, for plaintiff.

*Henry M. Canby,* Wilmington, and *Mathias F. Correa,* of Cahill, Gordon, Reindel & Ohl, New York City, for defendants.

MARVEL, Vice Chancellor: Plaintiff, who is a doctor of medicine and the owner of a patent for a cleansing substance for sensitive skin, has filed a complaint in which he claims in a first cause of action that the defendant,[1] Sterling Drug, Inc., has breached its agreement with plaintiff in that it has failed to account to plaintiff for his contractual share of the net profits earned by defendants through their exploitation of plaintiff's patent under an exclusive license granted by him to Sterling. The license agreement, which is dated October 10, 1946 and is attached to the complaint, provides that for the life of the patent Sterling shall annually pay plaintiff 5% of the net receipts of all sales made by Sterling and its subsidiaries of the licensed product provided a net profit is realized (after deduction of taxes) on the total amount of sales of the licensed products by licensee and its subsidiaries during each year of the agreement. In such latter event the royalties payable were not to be in excess of one third of such net profit. Other provisions fix a minimum[2] annual royalty and set forth the method of arriving at a computation of sales and the amount of royalties to be paid plaintiff. A separate paragraph provides that: " 'Net profit' shall be determined in accordance with Licensee's usual accounting methods and procedures."

In a second cause of action plaintiff alleges that the amounts paid him to date under the license agreement are substantially less than the sums payable under such agreement, that there is an actual and existing controversy as to the "* * * proper interpretation of said license agreement with respect to what constitute lawful charges to be made against income from the sales of said products * * *" and further alleges that the agreement "* * * insofar as it is executory, is void for

---

1. Sterling Drugs, Inc., owned all of the stock of the defendant, Winthrop Laboratories, Inc., plaintiff's former employer. As of December 30, 1955, Winthrop was merged into Sterling but continues to operate as a division of Sterling.

2. See paragraph 5 of the agreement, which, however, is not applicable on contract termination, see paragraph 9.

lack of mutuality in that respondents have reserved to themselves an arbitrary and unrestricted right of cancellation."

Defendants have not answered but have filed a motion which seeks an order for summary judgment on the grounds of statute of limitations, laches, account stated and accord and satisfaction "* * * as well as the reasons more completely stated in affidavits annexed hereto * * *." In their briefs defendants also argue that plaintiff has an adequate remedy at law for the amounts claimed to be due him. In the alternative defendants have moved under Rule 12(f), *Del.C. Ann.*, to strike certain portions of the complaint which they claim are "* * * prejudicial, impertinent and irrelevant and for the reasons more particularily stated in the affidavits annexed hereto."

In the first of two affidavits in opposition to defendants' motion for summary judgment plaintiff alleges that not having seen Sterling's books or been permitted to have them examined by an [3] independent accounting firm he is unable to ascertain specifically "* * * what amount of deductions made by defendant Sterling are legally proper under said license agreement * * *." He continues "* * * Each time that I complained to defendant Sterling that the royalties due me under said license agreement were not properly computed, I was told by defendant Sterling's representatives, who were officers of said defendant, that they would 'look into the matter.' " In paragraph II of this affidavit of June 1, 1957, plaintiff further states:

"11. All of the royalty checks, and each of them received by me from the defendants from March 1951 to date, have been cashed with the knowledge on the part of the parties to this action that: (a) the tendered sum was not an offer by the defendants, or either of them, to settle any dispute past, present, or future between said parties; (b) the receipt of the proceeds of said checks or any one of them by me, was not an acceptance by me of any offer by the defendants to settle

---

3. The firm of Peat, Marwick, Mitchell & Co. in 1953 did examine the limited data sent to plaintiff. They questioned the vagueness of the accounting provisions of the agreement as well as the methods employed to determine plaintiff's royalties. See also Ross Whitman affidavit.

any dispute, past, present or future between said parties; (c) there was no condition express or implied imposed by the defendants or either of them upon the receipt by me of the proceeds of said checks or any one of them; (d) none of the checks was offered to me by the defendants or either of them in full satisfaction of the defendants' obligation to me under said license agreement; (e) none of the checks of the defendant or either of them was accepted by me in full satisfaction of the defendants' obligation to me under said license agreement and (f) there never was any intent by me to compromise in any way my claim against the defendants for the proper amount due me under the terms of said license agreement."

In his second affidavit plaintiff names officers of Sterling Drug, Inc., to whom he allegedly voiced objection about the sufficiency of tendered royalty checks, which plaintiff admittedly periodically accepted and cashed, reiterates that he has never assented to the calculations made by Sterling and alleges that the enormity and complexity of Sterling's sales, on which the amount of plaintiff's royalties necessarily depends, entitle him to an accounting in equity.

Summary judgment when appropriate eliminates the expense and time of a trial, however such procedure should not be employed to deprive a litigant of his day in court when the papers on which such a motion is made present genuine issues of material fact. Plaintiff under oath has stated facts which if proved would establish the existence of a complex accounting transaction in which Sterling was under a duty to deal with plaintiff with that high degree of meticulous regard owed by a fiduciary to a beneficiary. Plaintiff claims he has been dependent on Sterling's sense of fair play in a venture in which he furnished a patented formula to a licensee which has knowledge not only of pharmaceutical merchandising but of proper accounting. Sterling, on the other hand, considers plaintiff to be merely the grantor of a patent license to whom no fiduciary duty is owed and who has been paid in full. Defendants further contend that trial of such issue of payment is unnecessary because plaintiff has over the years and in fact during this litigation, accepted tendered royalty payments under circumstances and conditions which required

rejection of such proffered sums by plaintiff were he to preserve his claim for a larger amount.

The parties apparently agree that the contract here involved is controlled by New York law, and each side cites the leading case of *Hudson v. Yonkers Fruit Co.,* 258 *N.Y.* 168, 179 *N.E.* 373, 80 *A.L.R.* 1052, on the defense of accord and satisfaction.

Were it entirely clear on the present record that tender of each of Sterling's checks had been coupled with an express or tacit condition that acceptance would constitute payment in full for each accounting period covered by a check, then perhaps in the interests of justice this Court should view the case as one falling within equity's historical jurisdiction (no motion to dismiss under Rule 12(b) (1) is of record) and give judgment accordingly. However, the record on the facts and circumstances surrounding payments by Sterling to plaintiff is ambiguous. Sterling contends that because its forwarding letters enclosing a "royalty statement" referred to tendered checks as the amount "due" plaintiff for the period in question and because accompanying reports of Sterling's accountants stated that "* * * In our opinion, the accompanying statement fairly presents the royalties payable under the agreement * * *", the present record clearly establishes that the checks were tendered and accepted under circumstances and conditions constituting an accord and satisfaction of an unliquidated or disputed claim as a matter of law. I cannot agree, however, that the present record factually establishes that the checks were tendered on a condition which was so unambiguous that their acceptance and negotiation bars plaintiff's claim to an accounting. Significantly, none of the checks or accompanying documents contains any statement unmistakably indicating that acceptance of a check would constitute payment in full to date.

On the matter of cancellation of the executory part of the contract as prayed for in the second cause of action again there is a need, in my opinion, to hear the facts particularly as to sub-licensing and the like by Sterling insofar as such course of action is related to licensee's right to terminate the agreement and at the same time to retain such

of its rights and privileges as in Sterling's "sole judgment" may be necessary to fulfill its obligations to third parties including sublicensees.

In view of these basic factual conflicts it will be necessary to determine at a preliminary hearing first whether plaintiff is entitled to an accounting in this Court, and on that part of the second cause of action pertaining to rescission, insofar as the contract is executory, whether licensee by sub-licensing agreements and the like has in effect the power to bring about a unilateral termination of the contract (see footnote 2, ante) while indirectly retaining its benefits. Counsel may confer with the Court as to how these issues and those subsidiary issues germane to those of plaintiff's asserted right to an accounting in equity and to cancellation as prayed for may most expeditiously be resolved.

Turning to defendant's motion to strike, it is obvious that while the complaint is not a model of Delaware equity pleading and that while allegations as to alleged duress exercised on plaintiff for the purpose of obtaining patent rights would be strictly pertinent only to a case of rescission ab initio, yet it cannot be said that such allegations have no possible bearing on the issue of plaintiff's right to an accounting in equity, and the allegations as to Sterling's refusal to produce books and records are hardly impertinent or scandalous. Finally, paragraph 18 pertaining to a charge that the contract insofar as it is executory is in effect nudum pactum clearly states a cause of action, and I have already determined that defendants are not entitled to summary judgment on such issue of cancellation.

On notice, an order will be entered denying defendants' motion for summary judgment and to strike.